**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIE STOKES | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| MARIROSA LAMAS, *et al*. | : | NO.  20-2192 |

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                           December 22, 2021

Presently before this Court is a counseled Petition for a Writ of Habeas Corpus filed by Willie Stokes ("Petitioner") pursuant to 28 U.S.C. § 2254.  Petitioner, currently serving a life term of incarceration, without the possibility of parole, at the State Correctional Institution-Chester, seeks habeas relief based on the Commonwealth's failure to disclose exculpatory information. *Brady v. Maryland*, 373 U.S. 83 (1963).  The Honorable Timothy J. Savage referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, it is recommended that Petitioner be afforded conditional habeas relief on his *Brady* claim.

## I.    FACTUAL AND PROCEDURAL HISTORY[1]

The trial court summarized the events leading to Petitioner's arrest and conviction:

A craps game being conducted on the front steps of an abandoned property at 30th and Girard Avenue, Philadelphia, Pennsylvania, on October 1, 1980 was interrupted by the slaying of one Leslie Campbell.  Approximately ten devotees of the art were participating in the game and included were [Petitioner], the victim

---

[1]  This factual and procedural history was gleaned from Petitioner's Habeas Corpus Petition ("Pet."), his Memorandum of Law ("Pet'r's Mem."), the Commonwealth's Response ("Resp."), inclusive of all exhibits thereto and the state court record.  In the preparation of this Report and Recommendation, this Court also reviewed Petitioner's Amended Memorandum of Law ("Pet'r's Am. Mem."), the Commonwealth's Amended Response ("Am. Resp."), and Petitioner's Response to the Commonwealth's Amended Response ("Pet'r's Resp. Am. Resp.").  *Stokes v. Lamas, et al.*, No. 20-2192 (E.D. Pa. 2020).

and an eyewitness, one Darrell Hargrove.  Hargrove testified that during the proceedings he was standing on the right of the victim when he suddenly heard what sounded like firecrackers.  These "firecrackers" were actually gunshots which slew Leslie Campbell, who was pronounced dead from eight gunshot wounds of the head and trunk.

Simultaneously with the shooting, the entire group of gamblers scattered from the scene.  Hargrove managed to gain entrance into the abandoned house and emerged approximately five to ten seconds later to observe [Petitioner] on the pavement, directly in front of the steps, with a gun in his hand.[2]

*Commonwealth v. Stokes*, No. CP-51-CR-0606661-1984, & slip op. at 1-2 (Phila. Cnty. C.C.P. Aug. 21, 1984).[3]

A jury convicted Petitioner on August 21, 1984 of first-degree murder and possession of an instrument of crime.  *Id.*  Following a sentencing hearing in which the jury found that mitigating circumstances outweighed aggravating circumstances, Petitioner's penalty was set at life imprisonment.  *Id.*  The presiding trial judge, the Honorable Edwin S. Malmed, denied post-verdict motions and formally imposed upon Petitioner a life sentence of incarceration and a concurrent term of two and one-half to five years for the weapons offense, to be served at a state facility.  *Id.*

Petitioner on appeal to the Pennsylvania Superior Court raised two issues:

---

[2]  Although this summary of the evidence supports Petitioner's conviction and reveals the Commonwealth's theory of the case, the testimony of the remaining witnesses was largely circumstantial or directly refutes the Commonwealth's theory.  Specifically, Franklin Lee has since recanted and Darrel Hargrove, at trial, did not claim to have seen Petitioner as the shooter.  *See* N.T. 8/16/84, at 29-31.  Another witness, Daniel McPeak, testified that while standing down the block, he saw an individual shooting into the crowd who matched Petitioner's general description.  *Id.* at 52-55.  The sole surviving victim of the shooting, Francis Dinkins, testified at a PCRA hearing that "he would have testified at trial that [Petitioner] was not the slayer."  *Commonwealth v. Stokes*, No. 00823 EDA 1991, slip. op. at 2, 599 A.2d 705 (Pa. Super. Ct. Aug. 22, 1991) (unpublished table decision).  Given the apparent weakness of these accounts, this Court cannot fully embrace the trial court's representation of Petitioner's presence at and implication in Mr. Campbell's death.

[3]  In addition to the petition, a federal habeas court may take judicial notice of court records.  *See Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988); Fed. R. Evid. 201(b)-(c) (stating that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and that "[t]he court . . . may take judicial notice on its own").  Accordingly, in reviewing this petition, this Court takes judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Philadelphia County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania, as well as the docket sheets regarding Petitioner's civil actions filed in this District.

> (1)     whether the trial court erred in permitting the Commonwealth to cross-examine a Commonwealth witness as to the witness' prior plea agreements and the witness' criminal history, and
>
> (2)     whether the Commonwealth presented sufficient evidence upon which to base a conviction for murder in the first degree.

*Commonwealth v. Stokes*, No. 1202 EDA 1985, slip op. at 1, 512 A.2d 54 (Pa. Super. Ct. Mar. 31, 1986) (unpublished memorandum).   The Pennsylvania Superior Court affirmed Petitioner's judgment of sentence, and the Pennsylvania Supreme Court denied allowance of appeal.   *Id.*; *allocatur denied*, 527 A.2d 539 (Pa. 1987).

A *pro se* petition for collateral relief filed on April 16, 1987, under Pennsylvania's Post Conviction Hearing Act ("PCHA"), 42 Pa. C.S.A. § 9541, *et seq.* (repealed),[4] was denied on February 14, 1991.   Pet. at 4.   The Pennsylvania Superior Court affirmed the denial of PCHA relief.   *Commonwealth v. Stokes*, 599 A.2d 705 (Pa. Super. Ct. Aug. 22, 1991) (unpublished table decision).   Petitioner did not seek allowance of appeal.

On October 30, 1995, Petitioner filed a second petition for post-conviction relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A § 9541 *et seq.*; therein he raised several claims of trial counsel ineffectiveness.   Pet. at 4.   The PCRA court denied Petitioner's bid for relief on January 3, 1996.   *Id.*   The Pennsylvania Superior Court affirmed this ruling and the state Supreme Court denied Petitioner's request for allowance of appeal. *Commonwealth v. Stokes*, 679 A.2d 279 (Pa. Super. Ct. 1996), *allocatur denied*, 698 A.2d 66 (Pa. 1997).

Petitioner sought habeas corpus relief in the United States District Court for the Eastern District of Pennsylvania, on September 30, 1998.   *Stokes v. Dist. Att'y of Phila., et al.*, No. 98-

---

[4]   Pennsylvania's PCHA was subsequently repealed and replaced in 1988 with what is now entitled the Post-Conviction Relief Act ("PCRA") §§ 9541- 46.

5182 (E.D. Pa. Sept. 30, 1998).  The petition was dismissed as untimely on May 18, 1999.  *Stokes v. Dist. Att'y of Phila., et al.*, No. 98-5182 (E.D. Pa. May 18, 1999).  The United States Court of Appeals for the Third Circuit and the United States Supreme Court denied his appeals.  *Stokes v. Dist. Att'y of Phila., et al.*, 247 F.3d 539 (3d Cir. 2001), *cert denied*, 534 U.S. 959 (2001).

On November 19, 2002, Petitioner filed his third PCRA petition; the trial court dismissed it, on May 29, 2003.  *Commonwealth v. Stokes*, No. CP-51-CR-0606661-1984 (Phila. Cnty. C.C.P. May 29, 2003).  Petitioner did not appeal this dismissal.  Pet. at 5-6.

Petitioner received an affidavit from the Commonwealth's key witness in his trial, Franklin Lee, indicating that he had testified falsely at all prior proceedings.  *Id.* at 6.  He filed a fourth PCRA petition, on January 21, 2005, raising, *inter alia*, a claim of newly discovered evidence.  *Id.* The trial court dismissed this fourth petition, without an evidentiary hearing, on December 12, 2005 and denied reconsideration; the Pennsylvania Superior Court affirmed, and the Pennsylvania Supreme Court denied a petition for allowance of appeal.  *Commonwealth v. Stokes*, No. CP-51-CR-0606661-1984 (Phila. Cnty. C.C.P. June 6, 2007); *Commonwealth v. Stokes*, No. 272 EDA 2006, slip op. at 7-8, 964 A.2d 948 (Pa. Super. Ct. Oct. 30, 2008) (unpublished memorandum); *allocatur denied*, 972 A.2d 522 (Pa. 2009).

On November 17, 2010, Petitioner filed a fifth PCRA petition in the form of a Petition for Writ of Habeas Corpus, that alleged: (1) that fraud was perpetrated upon the court, based upon Mr. Lee's October 19, 2005 affidavit; (2) that this issue was not previously litigated or waived; (3) that the information was previously unknown or undiscoverable with reasonable diligence; and (4) that the PCRA court erred in failing to conduct an evidentiary hearing based on the alleged newly discovered evidence of Mr. Lee's affidavit.  Brief for Appellant at 9, *Commonwealth v. Stokes*, No. CP-CR-0606661-1984 (Phila. Cnty. C.C.P. Nov. 15, 2013).  The PCRA court dismissed the

petition on November 15, 2013 as untimely.  *Commonwealth v. Stokes*, No. CP-CR-0606661-1984, slip. op. at 5 (Phila. Cnty. C.C.P. Nov. 15, 2013).  On appeal, the Superior Court affirmed the dismissal.  *Commonwealth v. Stokes*, No. 1335 EDA 2014, slip op. at 10, 120 A.3d 371 (Pa. Super Ct. Feb. 6, 2015).

Petitioner's sixth PCRA petition, filed on November 9, 2015, challenged his conviction on grounds of prosecutorial misconduct, government interference, and newly discovered evidence. Pet. at 9, 14.  The Pennsylvania Superior Court affirmed the trial court's dismissal as untimely; and the Pennsylvania Supreme Court denied a January 22, 2019 petition for allowance of appeal. *Commonwealth v. Stokes*, No. CP-51-CR-0606661-1984 (Phila. Cnty. C.C.P. Oct. 5, 2017); *Commonwealth v. Stokes*, No. 3437 EDA 2017, slip op. at 7 (Pa. Super. Ct. Oct. 24, 2018); *allocatur denied*, 212 A.3d 505 (Pa. 2019)**.**

On September 14, 2009, Petitioner filed a second federal writ of habeas corpus in this court. Pet. at 13.  However, the Third Circuit denied his application for leave, on September 24, 2009, citing a failure to meet the 28 U.S.C. § 2244(b)(2) standard for permitting a second or successive habeas petition.  *In re Willie Stokes*, No. 09-3628 (3d Cir. Oct. 13, 2009).

Petitioner filed an "Application for Leave to File Second Petition for Writ of Habeas Corpus," on August 14, 2012.  Pet. at 8.  On September 4, 2012, the Third Circuit again denied his petition, citing, *inter alia*, a failure to meet the standards outlined in section 2244(b)(2) for filing a second or successive habeas petition.  *In re Willie Stokes*, No. 12-3244 (3d Cir. Sept. 4, 2012).

Next, on January 14, 2013, Petitioner filed in the Eastern District of Pennsylvania a "Motion for Relief from Judgment Pursuant to Rule 60(b)."  *Stokes v. Dist. Att'y of Phila., et al.*, No. 98-5182 (E.D. Pa. Jan. 14, 2013).  That motion was denied on January 29, 2013.  *Stokes v. Dist. Att'y of Phila., et al.*, No. 98-5182 (E.D. Pa. Jan. 29, 2013).

Seven years later, on February 21, 2020, Petitioner filed the instant "Petition for Leave to File Successive Habeas Corpus Petition," citing unlitigated issues and information previously unavailable through the exercise of due diligence. Pet. The relevant issues and information presented alleged that:

> [t]he Commonwealth knowingly used the false testimony of Franklin Lee to convict [Petitioner] then prosecuted and convicted Mr. Lee for perjury following [Petitioner]'s conviction.
> Mr. Lee's false statements were used to obtain probable cause for [Petitioner]'s arrest and subsequent conviction.
> . . . .
> The Commonwealth never informed [Petitioner] that charges of perjury were being considered against Mr. Lee.
> The Commonwealth hid the information of Lee's conviction for over thirty (30) years by hiding it in Lee's file.
> As a state inmate, [Petitioner] did not have access to Mr. Lee's criminal docket and the basis of the charges could not have been discovered by the exercise of due diligence.
> . . . .
> The factual predicate for the present claim could not have been discovered previously through the exercise of due diligence.
> . . . .
> The new evidence that the Commonwealth convicted their key witness for perjury [was] the very evidence used against [Petitioner] makes it more likely than not than no reasonable juror would have convicted him . . . .

*Id.* at 11-14. The Third Circuit granted Petitioner leave to file a second or successive petition. *In re Willie Stokes*, No. 20-1387 (3d Cir. Mar. 23, 2020).

Upon the Third Circuit's transfer of Petitioner's application for consideration on March 23, 2020, this Court ordered an evidentiary hearing to permit factual development of Petitioner's *Brady* claim. *Stokes v. Lamas, et al.*, No. 20-2192 ((E.D. Pa. July 28, 2021). After an evidentiary hearing before this Court, on November 9, 2021, the Commonwealth filed an "Amended Response to Successive Petition for Writ of Habeas Corpus," which conceded that:

> (1)     The Commonwealth did not disclose exculpatory evidence and that Mr. Stokes is entitled to relief on his *Brady* claim.

> (2)   The evidence presented at the November evidentiary hearing
> fatally undermines confidence in Mr. Stokes' conviction.

Am. Resp. at 4-7.  Additionally, the Commonwealth requested 180 days to decide whether to retry

or release Petitioner.  *Id.* at 7.  Petitioner opposes this request and seeks immediate release.  Pet'r's

Resp. Am. Resp. at 2, *Stokes v. Lamas, et al.*, No. 20-2192 ((E.D. Pa. July 28, 2021).

This Court finds that the Commonwealth waived its affirmative defense of procedural

default and that Petitioner's *Brady* claim is meritorious.[5]  Furthermore, the Commonwealth's

egregious violation of Petitioner's constitutional rights, by withholding crucially exculpatory

evidence, entitles it to no more than 60 days from this Court's final decision to determine whether

to retry Petitioner.[6]

## II.   DISCUSSION

### A.  This Successive Petition Satisfies AEDPA's Requirements

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the filing

and adjudication of federal habeas corpus petitions.  28 U.S.C. § 2241 *et seq*.  It "established a

stringent set of procedures that a prisoner in custody pursuant to a judgment of a State court" must

adhere to if he chooses to file a second or successive petition.  *Burton v. Stewart*, 549 U.S. 147,

152 (2007) (internal quotation marks omitted); *Tyler v. Cain*, 533 U.S. 656, 661 (2001).  Pursuant

to 28 U.S.C. § 2254, which governs habeas petitions filed by persons held in state custody, and 28

U.S.C. § 2244(b)(3)(A), a petitioner must obtain a court of appeal's permission before filing a

second or successive petition in a district court.  The Third Circuit granted Petitioner permission

to file a successive petition, based on the following preliminary finding:

---

[5] Am. Resp. at 3 n.3.  ("Respondents reiterate and reaffirm their waiver of any procedural bars that would otherwise bar consideration of the merits of this claim.").

[6] *Gibbs v. Frank*, 500 F.3d 202, 207 (3d Cir. 2007) ("As an equitable remedy, a federal court has wide latitude in setting the time period for conditional relief.").  Notably, 43 days have already lapsed since the hearing revealed the Commonwealth's violative conduct.

> . . . Petitioner has made a prima facie showing that the factual predicate for his claim, i.e., the prosecution of Frank Lee for perjury immediately following Petitioner's trial, (i) "could not have been discovered previously through the exercise of due diligence"; and (ii) "the facts underlying the claim . . . would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(A)-(B).  Our determination is only that Petitioner has made a prima facie showing that he satisfies the requirements of § 2244(b)(2).  The District Court will determine independently whether Petitioner has actually satisfied those requirements and whether he is entitled to relief on the claim raised in his proposed habeas petition.

*In re Willie Stokes*, No. 20-1387 (3d Cir. Mar. 23, 2020).  Therefore, this petition is properly before this Court.  Our task, as set out by the Third Circuit, begins with deciding whether or not Petitioner satisfies section 2244(b)(2)(B).

Once the court of appeals finds a *prima facie* showing of eligibility, the district court is, nevertheless, obligated to conduct an independent gatekeeping inquiry under section 2244(b)(4). *Goldblum v. Klem*, 510 F.3d 204, 220 (3d Cir. 2007).  The relevant statutory provision here dictates that "[a] district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."  28 U.S.C. § 2244(b)(4).  Petitioner argues that he meets the second requirement.[7]

An applicant must show both that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence" and that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would

---

[7] Petitioner does not assert that he meets the first requirement, "that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A).

have found the applicant guilty of the underlying offense."   § 2244(b)(2)(B).   "Unless both the procedural and substantive requirements of § 2244 are met, the District Court lacks authority to consider the merits of the petition."   *Benchoff v. Colleran*, 404 F.3d 812, 816 (3d Cir. 2005). Petitioner argues that he has satisfied both requirements and this Court agrees.

### 1.   The Factual Predicate of Franklin Lee's Conviction Could Not Have Been Discovered Through Due Diligence

When examining the diligence of a petitioner's efforts to uncover evidence of the factual predicate, "the burden is on the petitioner to credibly explain why a 'reasonable investigation' would not have uncovered the newly discovered facts at an earlier time."   *Wilson v. Beard*, No. 02-374, 2003 U.S. Dist. LEXIS 9737, at *22 (E.D. Pa. May 8, 2003) (quoting *In re Boshears*, 110 F.3d 1538, 1541 (11th Cir. 1997)).   However, when "police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight."   *Banks v. Dretke*, 540 U.S. 668, 675-76 (2004).

Petitioner filed his first federal habeas petition on September 30, 1998.  Pet. at 6.  Thus, we must determine whether the factual predicate for Petitioner's *Brady* claim could have been discovered before that date through the exercise of due diligence as required by section 2244(b)(2)(B)(i).  Only the prosecutor knew about the perjured testimony; he failed the duty to inform Petitioner.  Petitioner first became aware of the grounds for relief when he was informed by Mr. Lee's affidavit of October 19, 2005.[8]  *Id.*  We conclude that, based on the record and the Commonwealth's concession, the factual predicate at issue could not have been discovered earlier through the exercise of due diligence.   Am. Resp. at 6.  Therefore, Petitioner has satisfied section 2244(b)(2)(B)(i).

---

[8]  The Commonwealth has conceded that "the factual predicate of the [*Brady*] claim would not have been discovered previously through the exercise of due diligence."  Am. Resp. at 6.

**2.  The Facts Underlying Petitioner's *Brady* Claim, Viewed in Light of the Evidence as a Whole, Would Sufficiently Establish by Clear and Convincing Evidence That No Reasonable Juror Would Have Found Petitioner Guilty of Leslie Campbell's Death**

Our inquiry here essentially has three steps.  First, we must identify "the facts underlying the [Petitioner's] claim" and accept them as true for purposes of evaluating the application.  § 2244(b)(2)(B)(ii).  Next, we must determine if these facts establish a constitutional error.  Finally, this Court must evaluate these facts in light of the evidence as a whole to determine whether had these facts been made public at the time of trial, Petitioner clearly could not have been convicted.  In other words, the petition must be denied if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319, (1979) (establishing this standard for evaluating a habeas challenge to the sufficiency of the evidence).

First, the underlying fact that nine days after Petitioner's jury verdict, Mr. Lee was charged with perjury, for inculpatory statements made at the preliminary hearing.  The Commonwealth withheld this exculpatory information and conviction of a key trial witness from Petitioner.  Pet. at 11-14.  Accepting these facts as true, the Commonwealth, withheld sufficiently exculpatory evidence.

Second, for this analysis, on its face the Commonwealth's action of withholding such sufficiently exculpatory evidence was constitutional error.

Third, we determine whether no reasonable factfinder at Petitioner's trial would have found him guilty beyond a reasonable doubt, but for their reliance on the undisclosed perjured testimony.  Mr. Lee's preliminary hearing statement was material to Petitioner's conviction.  The Commonwealth highlighted how weighty Mr. Lee's testimony was during the trial's closing arguments because it was the only evidence directly identifying Petitioner as the shooter.  Neither

of the other two Commonwealth witnesses could specifically identify Petitioner as the shooter. N.T. 8/16/84 at 29-31, 52-55.  But for Mr. Lee's perjured preliminary hearing testimony that Petitioner had admitted to the killing, N.T. 5/30/84 at 41-43, being used to cross-examine Mr. Lee, no other testimony or evidence existed to meet the Commonwealth's burden of proving Petitioner's guilty beyond a reasonable double.  Pet'r's Mem. at 2 n.1.  The Commonwealth conceded this evidence's materiality to Petitioner's conviction and agreed that Petitioner by "clear and convincing evidence" had established "that, but for constitutional error, no reasonable fact-finder would have found him guilty of first-degree murder."  Am. Resp. at 6.  Having determined that Petitioner has satisfied the evidentiary requirements outlined in section 2244(b)(2)(B)(ii), we next examine whether Petitioner's *Brady* claim is meritorious.

### B.  Petitioner's Alleged *Brady* Violation is Meritorious

Petitioner has qualified for the Court to examine the merits of his *Brady* claim.  The elements of a *Brady* claim are:

> The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Prejudice is the materiality requirement, *id.* at 282, to wit, the defendant must show that there is a reasonable probability that, if the omitted evidence had been disclosed to him, the outcome of the proceeding would have differed.  *See Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995).  For omitted evidence to be material, the evidence does not need to establish by a preponderance that its disclosure would have resulted in an acquittal. *Id.* at 434.  Instead, the omitted evidence must detract from the reviewing court's confidence in the outcome that the jury did reach.  *Id.*  The requisite lack of confidence may exist although sufficient record evidence to convict remains, even after discounting the inculpatory evidence

impacted by the undisclosed evidence. *Id.* at 434-35. Materiality is evaluated by examining the collective effect of all the undisclosed evidence, not by evaluating the impact of each item of undisclosed evidence separately. *Id.* at 436. However, to determine whether any particular piece of undisclosed evidence is favorable, each item is evaluated separately. *Id.* at 436 n.10. Favorability extends to impeachment evidence as well as exculpatory evidence. *Smith v. Cain*, 565 U.S. 73 (2012); *United States v. Bagley*, 473 U.S. 667, 676 (1985).

Petitioner claims that the Commonwealth concealed key exculpatory evidence in violation of *Brady*. Pet. 43-44. Specifically, for over thirty years, the Commonwealth failed to disclose material information in which there was a reasonable probability that had it been disclosed, the outcome of Petitioner's trial likely would have been different. *Id.* at 7-8, 16-23, 25-26.

### 1. The Evidence at Issue Was Favorable to Petitioner

The evidence the Commonwealth failed to disclose was favorable to Petitioner, because the Commonwealth's case against Petitioner depended on the jury believing Franklin Lee's original preliminary hearing statement implicating Petitioner rather than his recantation at trial.

At the preliminary hearing, Mr. Lee testified that Petitioner had confessed to murdering Leslie Campbell. N.T. 5/30/84 at 41-43. However, at trial, Mr. Lee refused to repeat this accusation. N.T. 8/20/1984 at 3-7, 9, 12-13. Instead, he testified that his prior preliminary hearing testimony was false; Petitioner had never confessed to the murder. *Id.* Nonetheless, the trial prosecutor used the prior statement on cross-examination to discredit Mr. Lee's trial recantation. *Id.* at 7-9, 19-23. Nine days after Petitioner's trial, the Commonwealth, (upon recommendation by Petitioner's prosecutor), charged Mr. Lee with perjury based on this trial recantation; Mr. Lee, ultimately, pled guilty. Pet. Ex. O, at 13; Resp. at 3-4. During earlier post-conviction proceedings, the Commonwealth maintained that the perjury prosecution was for Mr. Lee's trial recantation,

N.T. 8/23/89 at 54-55, and supported this contention with a complaint listing the date of Mr. Lee's

perjury offense as the date of Petitioner's trial. Pet. Ex. Q. However, the bill of information clearly

listed the perjury offense as occurring at Petitioner's preliminary hearing, and this was the best

available evidence. *See* Pet. Ex. Q.; N.T. 11/9/21 at 32-33 (experienced prosecutor McMahon

explaining that the bill of information clearly sets out the charges to be pled guilty to). The

Commonwealth has conceded that this evidence was "plainly . . . favorable to [Petitioner]." Am.

Resp. at 5.

### 2. The Evidence at Issue Was Suppressed by the Commonwealth

Prosecutors are obligated to disclose materially exculpatory evidence in the government's

possession to the defense. *Brady*, 373, U.S. 83 at 87. Failure to do so violates a defendant's due

process rights. *Id.*

The Commonwealth admits that for over thirty years it did not disclose Mr. Lee's perjury

charge and guilty plea. Resp. at 5. The Petitioner lacked access to Mr. Lee's criminal docket, and

hence, the perjury conviction could not have been discovered by his exercise of due diligence. Pet.

at 12-13; Ex. Q.

The Commonwealth's decision to prosecute Mr. Lee triggered its constitutional duty to

disclose the perjury; a decision that had a potentially favorable impact for Petitioner.[9] *See Kyles*,

514 U.S. at 434; *Bagley*, 473 U.S. at 667. Their obligation to disclose the perjury extended even

post-conviction; the Commonwealth concedes this duty. Am. Resp. at 5. *See Imbler v. Pachtman*,

424 U.S. 409, 427 n.25 (1976) ("[A]fter a conviction the prosecutor also is bound by the ethics of

his office to inform the appropriate authority of after-acquired or other information that casts doubt

upon the correctness of the conviction."). *See also Bracey v. Superintendent Rockview SCI*, 986

---

[9] This Court notes that Petitioner was convicted and sentenced on August 21, 1984, his direct appeal ended on April 1, 1987, and the judgment became final on June 30, 1987. Pet. Ex. B, at 5-6.

F.3d 274, 293 (3d Cir. 2021) (stating that a "defendant's reasonable expectation that the government will comply with *Brady* does not evaporate upon conviction or after trial. Rather, unless and until there are reasons to think otherwise, that reasonable expectation continues past trial, into postconviction proceedings and beyond.") (internal quotation marks and citations omitted). Nonetheless, the Commonwealth suppressed the evidence at issue, which it has conceded. Am. Resp. at 4.

### 3. The Evidence the Commonwealth Failed to Disclose Was Material to Petitioner's Conviction

The undisclosed evidence of Mr. Lee's perjury charge and conviction for his false inculpatory preliminary hearing testimony, as reflected by the bill of information, Pet. Ex. Q, directly contradicts the Commonwealth's assertions that it was Mr. Lee's trial testimony that was false. Mr. Lee's preliminary hearing testimony, used upon cross-examination, was material to securing Petitioner's conviction. The failure of the Commonwealth to disclose that it was false, even post-trial, prejudiced Petitioner. Consequently, the prosecution relied on testimony to convict Petitioner that they knew was false. Letting Mr. Lee's prior testimony stand and be used for impeachment, even after the Commonwealth knew it was false, unquestionably violated *Brady* and entitles Petitioner to relief.[10] The Third Circuit reviewed how this Court must evaluate the materiality of *Brady* evidence:

> The materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state. Suppressed evidence that would be cumulative of other evidence or would be used to impeach testimony of a witness whose account is strongly corroborated is generally not considered material for *Brady* purposes. Conversely, however, undisclosed evidence that would seriously undermine the testimony of a key witness may

---

[10] To the extent Petitioner raises a claim under *Napue v. Illinois*, this Court does not directly address the merits of such a claim, as it was not fully briefed by the Commonwealth. 360 U.S. 264 (1959). *See* Pet'r's Mem. at 15-17, 20-25; Am Resp. at 7 n.4.

be considered material when it relates to an essential issue if the testimony lacks strong corroboration.

A court must evaluate the tendency and force of the undisclosed evidence item by item to determine whether the evidence is material. In addition, a court must evaluate its cumulative effect for purposes of materiality separately. Individual items of suppressed evidence may not be material on their own, but may, in the aggregate, undermine[] confidence in the outcome of the trial.

*Johnson v. Folino*, 705 F.3d 117, 129 (3d Cir. 2013) (internal quotation marks and citations omitted). "But as the Third Circuit and Supreme Court have made clear, materiality is not dependent on effectively gutting the remaining evidence." *Natividad v. Beard*, No. 08-449, 2021 U.S. Dist. LEXIS 159379, at *26 n.92 (E.D. Pa. Aug. 24, 2021).

In *Banks*, the United States Supreme Court admonished prosecutors for letting an informant's statements, which they believed to be false, stand uncorrected throughout the proceedings. The Court concluded that "prosecutors represented at trial and in state postconviction proceedings that the State had held nothing back . . . It was not incumbent on [defendant] to prove these representations false; rather, [defendant] was entitled to treat the prosecutor's submissions as truthful." 540 U.S. at 698. Earlier *Brady* cases similarly indicate concern for permitting false testimony. *See, e.g.*, *United States v. Agurs*, 427 U.S. 97, 103(1976) (stating that a "conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury").

Petitioner has stated that the suppression of the evidence at issue was prejudicial to him because: (1) if the Commonwealth convicted Mr. Lee for falsely accusing Petitioner at the preliminary hearing, this information should have been disclosed to the defense as *Brady* material; (2) however if the Commonwealth prosecuted Mr. Lee for falsely incriminating Petitioner at trial

and failed to disclose this information to Petitioner, this information could have been used to challenge his conviction before the PCRA court.  Pet. Ex. O, at. 13-14.

Mr. Lee testified at trial that the interrogating officers coerced him into making his prior false statement against Petitioner.  N.T. 8/20/84 at 3-4.  The Commonwealth then used his prior perjured statement to impeach his credibility in front of the jury.  N.T. 8/20/84 at 4.  The Commonwealth, in its closing argument, espoused its own highly prejudicial reasoning to explain to the jury why Mr. Lee's testimony had changed between the preliminary hearing and trial.

> What caused Franklin Lee to change his mind?  Why doesn't Franklin Lee say the same thing he said before?  He is an animal. He is the type of guy that would kill anybody, rape a woman.  He is as low as you can go.  Why doesn't he just come in and say the same thing, and say "I'll stick to my original story, Willy Stokes admitted to me at the party that he did it."?
> I think you can use a little common sense here. . . .
> . . . .
> Because, . . . of one thing I can assure you.  The deal that Franklin Lee had has now been X'd out.  It is gone.  He has no more deal . . . .

N.T. 8/20/84 at 91, 96-97.  A jury convicted Petitioner and only nine days later, the Commonwealth, through Petitioner's prosecutor, charged Mr. Lee with perjury.  Pet. Ex. O, at 13; Resp. at 3-4.  The Commonwealth on Petitioner's initial appeal continued contending that Mr. Lee gave perjured testimony at the trial, and not at the preliminary hearing.  N.T. 8/23/89 at 54-55. This was a misrepresentation of the truth as indicated in the bill of information charging Mr. Lee with perjury.  Without the lie, the case would have failed at the preliminary hearing stage.

At the November 2021 evidentiary hearing, Mr. Lee gave credible testimony under oath that the statements he had given to police and at the preliminary hearing inculpating Petitioner were false, an admission supported by affidavits provided by Mr. Lee in 2005 and 2021.  N.T. 11/9/21 at 68-69, 75.  Mr. Lee also stated that, in addition to a favorable deal in exchange for his

testimony, he was also offered sex and drugs. *Id.* at 60.[11]  Had Petitioner known back in 1984 that

Mr. Lee had pled guilty to committing perjury in his trial proceedings, he could have sought out

these same affidavits while his conviction was still on direct appeal.  *See* N.T. 8/23/89 at 56-57

(Commonwealth stating that "the jury found that [Mr. Lee]'s recantation was not credible . . . and

used that evidence to convict . . . [Petitioner]").  *See also Kyles*, 514 U.S. at 435 (stating that

reversal of a conviction is required upon "showing that the favorable evidence could reasonably

be taken to put the whole case in such a different light as to undermine confidence in the verdict").

This Court also found testimony by former Assistant Philadelphia District Attorney Jack

McMahon extremely credible in supporting the veracity of Mr. Lee's evidentiary hearing

testimony that he pled guilty to the charges in the bill information rather than at trial.  Based on

his extensive experience within the Philadelphia District Attorney's office, as a former prosecutor,

McMahon confidently stated that it was the common practice of the office to use the charges

reflected in the bill of information for a defendant's guilty plea.  N.T. 11/9/21 at 21-22.  Given that

the guilty plea transcripts of Mr. Lee's perjury conviction remain unavailable, this Court finds his

testimony highly persuasive.[12]

The Commonwealth, after the November 2021 evidentiary hearing, conceded that: (1) it

did not disclose exculpatory evidence; (2) Mr. Lee's evidentiary hearing testimony was credible;

and (3) the best available evidence suggests that Mr. Lee pled guilty to perjuring himself at

Petitioner's preliminary hearing.  Am. Resp. at 4-5.  The Commonwealth has conceded that the

---

[11] Similar allegations against the same detectives in Petitioner's case, Lawrence Gerrard and Ernest Gilbert, have been litigated in Pennsylvania state courts.  *See Commonwealth v. Lester*, No. 684 EDA 1989, 572 A.2d 694, 696 (Pa. Super. Ct. Feb. 23, 1990) (in which Gerrard and Gilbert were found to have used similar coercive methods; "[w]e find that the police's offer of sex constituted a provocation powerful enough to coerce [defendant] to cooperate"); *Commonwealth v. Harvey*, No. 1473 EDA 2019, 241 A.3d 472 (Pa. Super. Ct.  Oct. 28, 2020) (unpublished table decision).

[12]  Mr. McMahon also highlighted the highly irregular conduct by Petitioner's homicide prosecutor issuing a bill of information for perjury to someone in the very case he was assigned to.  N.T. 11/9/21 at 35-38.

suppression of this evidence fatally undermines confidence in Petitioner's conviction, that it violated Petitioner's constitutional rights, and that, consequently, Petitioner is entitled to relief. Am. Resp. at 5-7.  This Court agrees that Petitioner has met his burden, that his constitutional (*Brady*) rights were violated, that the trial verdict is unreliable, and that he is entitled to relief.

### III.    CONCLUSION

The Commonwealth has waived any procedural bars to the consideration of Petitioner's *Brady* claim, *see* Am. Resp. at 3 n.3, and this Court finds the claim meritorious.  Accordingly, I make the following:

## RECOMMENDATION

**AND NOW**, this 22nd day of December 2021, for the reasons contained in the preceding Report, it is hereby **RECOMMENDED** that Petitioner's habeas petition based on the *Brady* claim be **CONDITIONALLY GRANTED**.   It is further **RECOMMENDED** that Petitioner be discharged from all custody resulting from his conviction and sentence in Philadelphia County's Court of Common Pleas in CP-51-CR-0606661-1984 **UNLESS**, within 60 days from the date of this Court's final determination of this matter, the Commonwealth of Pennsylvania retries the charges against Petitioner.

It is so **ORDERED**.


_____*/s/ Carol Sandra Moore Wells*_____
CAROL SANDRA MOORE WELLS
United States Magistrate Judge